We have some materials on the bench that I understand have been taken from the record in the case, and I presume there's no objection to them. There's some material. They're both the same. One is just the excerpts of record documents themselves, and the other is a highlighted version. Well, has counsel seen them for the first time right now? Yes. Well, maybe you could have shown them a little sooner. He's seen the excerpts of record before now. He just hasn't seen... He hasn't seen the yellow. Right. But I'm prepared to do either one if you want to look at one or the other. Well, do you have an objection to that yellow? It seems like everything is highlighted, so... I guess if it came from the record, your Honor, I guess you have the right to object. I haven't gone through it yet. And all of the excerpts of record numbers are down in the lower right-hand corner. Okay. Your Honor, my name is Andrew Kamens, and I represent Mid-Continent Casualty Company, and I'd like to reserve three minutes for rebuttal, please. I'd like to focus today on three issues in this case, if I may, unless the Court has any other questions. First, I'd like to talk about timeliness of the appeal. Second, I'd like to talk about the real party and interest issue. And third, I'd like to talk about what the burden should have been applied on remand from this Court's last appeal. Okay. So first of all, I'd like to talk about the timeliness issue. And the issue really is, was the order on July 14th, 2010, a final decision under 28 U.S.C. 1291? We contend that that July 14th order was not a final decision. And the reason is that the order was on a 59E motion to amend the judgment for prejudgment interest. The Court ordered on July 14th prejudgment interest. However, the Court did not order an amount of prejudgment interest, and the Court could not order an amount of prejudgment interest at that point. And there's a reason. And if you look at the first page. The Court granted the unopposed motion, which stated that the interest was 1.4, such and such, correct? Correct, Your Honor. And what did the Court say in response to that motion? Excuse me? What did the Court say in response to that motion to amend the judgment? The only thing the Court said was that it granted the motion, but it did not say. It ordered and it judged and decreed and it granted the motion, correct? Correct. However. And was that motion opposed? No, that motion was not opposed. What did the motion ask for in terms of prejudgment interest?  Well, the motion says that it's asking for $1.44 million, and I quote, depending on the exact date the payment was made. And it also said payment was made in approximately July 2005. In a footnote, Titan dropped, Titan said, Titan will furnish the Court and counsel with proof of the payment and date of payment. That evidence was never supplied to the Court at any time. So before the July, at the time of the July 14th order, we had no idea what payment was made, if any payment was made, the amount of the payment, and when it was made. And if you look at. . . See, the problem I have with it is that you already had a judgment entered on summary judgment against you, that now this motion is granted. Your time is running and it's basically ignored. And this is an order that doesn't need a separate judgment under Rule 58. So I'm having trouble understanding why the Court says it's granted and. . . It ordinarily wouldn't need a separate judgment, Your Honor. However, if you look at actually the subsequent order on attorney's fees that the Court granted, and I put that, it's ER 1191. . . Excuse me. ER 10, which is the order granting Titan's motion for attorney's fees, the Court, Judge Peckman herself said, Kennedale's insurer, National Union, paid for, quote, some portion of the settlement with Williamsburg. So even subsequent to that July 14th order, it's clear that Judge Peckman herself does not know because there's no evidence in the record. But that's not what Judge Peckman is thinking about where things are, does it? The question is under the rules whether you had to appeal. Well, according to. . . So what is. . . I guess what I'm waiting for is why don't the normal rules apply here? I mean, you have a final judgment. You have a motion to amend the final judgment. You now have your appeal time starts running. Well, under, if you look at, and it hasn't been decided in this circuit, but if you look at the First Circuit case, the Seventh Circuit, and the Eighth Circuit case, Pace, Deeser, and Commercial Union, which are cited in our briefs, and those follow after Osterpath, which the Supreme Court said that premature, excuse me, pre-judgment interest, an order on pre-judgment interest is part and parcel of the damages. And in those three cases, those three circuits decided that when pre-judgment interest is ordered, but there's more than just clerical work to be done to determine the amount required to pay, the amount that's owing, then it does not start the clock running. Well, but what more than clerical work was done here? Well, what's needed is. Because there wasn't a hearing after this. That's correct. In fact, and that's one of our objections, is that there never was evidence. What was needed was for evidence to be put into the record. There is no evidence. Did you ask the court for that? We had no opportunity to ask the court because we had no. Sure you did. You just filed a piece of paper. Well, we had no expectation, Your Honor, that the court would actually enter a judgment without that evidence. So we were all waiting for the evidence to be submitted. The court was waiting for the evidence to be submitted because the court didn't know what ended up happening is on the attorney's fees motion, the court requested. Yeah, the attorney's fees motion is separate. Well, no, but that's when the court requested that Titan file a judgment. And when Titan filed a corrected summary of judgment, and when Titan did that, they stuck in the $1.44 million in pre-judgment interest, which Judge Peckman signed, but still no evidence had been filed at that point. But you never asked for an evidence, Your Honor, and any correction just seemed that it was just an arithmetic clerical type of thing. Well, actually, that isn't true because if you look at ER 281, 283, which is in the packet, which is the settlement agreement and release, what it talks about is it talks about three separate payments that are made, not necessarily in July 2005, and it says Williamsburg's or Kennedale's insurers, insurers plural, will pay the $6 million. It never breaks it out. There's no evidence that says that any money was ever paid by National Union, when it was paid, or in what amount it was paid. So there's just no evidentiary basis at all to say that the damages were ever liquidated, let alone when they were liquidated. For liquidated damages, you need to know how much was paid and when it was paid, and then obviously the interest rate to calculate conversion interest. But it just seems to be that there's sort of a tendency on your part to make all these arguments for the first time here because even on the attorney's fees, even though that's separate and separately appealable, you don't raise that in your opening brief either, right? The reason we don't raise that is because we don't, to the extent that the court's ruling and the underlying action stands, we don't have really an objection to it. The only objection, and we put this in the footnote, is if it's remanded, we'd like that issue to be remanded too. But if the court's ruling stands, I mean, and it's the same with the judgment on prejudgment interest, to the extent that they could provide that proof, we didn't have an objection, but that proof was never provided. You want to rewrite how we do business in the courts. I mean, first, you know, what happened after it was adjudged and entered and all of that, and then you say, well, there was stuff that happened later. And you said, well, we never got an opportunity for a hearing. And Judge McKeown pointed out, well, you could have asked for one, but you didn't. And so there were only these. And then, you know, Appellate 101 is you've got to, you know, if you're appealing something, you put it in your opening brief or it's waived, and you're saying, well, we didn't put it in there because we, you know, we're supposed to be some kind of mind readers. No, that's not it at all. We're just trying to say that. We're trying to get a do-over, but you didn't do anything on the times that you had to do it. No, we're not trying to get a do-over. All we're saying is if the ruling stands, then we don't have an objection. The only, our objection is to the July 14th summary judgment motion. And if you look at Ninth Circuit precedent in Ray Jack Rayleigh and the Kennedy case, which follow from the Supreme Court's case in first tier, in those cases, when there's a judgment for damages but the amount has not yet been determined, if you file a notice of appeal, first tier says it's premature, and RAP4 does not save that for a later, unless you file a later notice. So what Titan's asking you to do. Well, it's better to be early as opposed to late. I think that's a perfect, because you can always continue to file. It's true, but under Jack Rayleigh and under Kennedy, an early notice is ineffective too. So what you're forcing, if you accept Titan's rule, what you're doing is you're increasing uncertainty about when to file, and you're going to force appellants or litigants to have to file multiple notices. Help me before you go on to the real party in interest, which I would like to hear about. Just help me. What was it that you didn't know? What we didn't know was whether National Union actually paid any money, how much money they paid, and when they paid it. And that's the information you need for liquidated damages, to get prejudgment interest. Prejudgment interest, okay. Okay, why don't you talk about the real party in interest. That's a good segue. Well, the real party in interest, though, you might as well start there from the standpoint that, why didn't MidCal waive the argument that Kennedale's stipulated dismissal terminated the rights of National Union? If not, where did MidCal raise the specific argument in the district court? So this is another one of those, we're hearing it for the first time. Well, it's not being heard for the first time, Your Honor. I respectfully. Tell me where below we heard this. We had motions to a real party in interest, and the court determined that the real party in interest was Titan. And, unfortunately, the problem here is what the court's order did was it allows Titan, which is a defunct corporation, which has no claim because it assigned its claim to Kennedale to litigate, and it allows National Union to execute on the judgment. But National Union, which was a party to this case, didn't raise the compulsory counterclaim. And so they are not able to actually litigate the matter. So it's allowing a party who can't execute on the judgment to litigate, and a party to execute on the judgment who can't litigate. Well, can you show me where in the record below that you objected, where you raised an argument against Kennedale's stipulated dismissal terminate the rights of National Union? Where below is that argument raised? Can you cite me in the record where you raised that argument? In our motion for real party in interest, I don't have the actual record right here in front of me, but in that real party in interest, what we argued and what we're arguing today is that to the extent National Union was subrogated to anybody, it was Kennedale. So the choice was either National Union or Kennedale. National Union, as Kennedale's subrogate, could have brought the claim, or Kennedale could have brought the claim, and National Union could have been its subrogate. Now, Kennedale did bring the claim, and then Kennedale's claim was dismissed with prejudice. So when that happened, National Union's claim should have gone out the window too, because National Union can't get a second bite of the apple by litigating through Titan. And by the way, it is Titan that's litigating. They appeared separately.  Kennedale appeared separately. Well, here's the question. Maybe you don't have where it is, but I tried to search everything to come up with the best argument I could for you to see if there was something. And the best I came up with was at docket 149, where you basically made a passing reference that Kennedale was dismissed, but that there needed to be other proof that there were the valid assignments. So I tried to understand that sentence to see if that actually is the same thing you're arguing here, which is that Titan doesn't really have the authority to make the claim. But I couldn't quite get it out of there, and so maybe I'm not. That was the only thing I could find. I read through everything. Well, Titan in the settlement with Kennedale assigned their claims to Kennedale. There's no dispute about that. Everyone agrees with that. Well, you said absent proof that Kennedale received a valid assignment from Titan, but now you're just telling me there's no dispute about that. So I'm just reading what you wrote. Maybe you didn't write it, but what was written on behalf of your client in the court below, trying to figure out if this issue was raised so that we can look at it here. That's my only concern. I'm not trying to figure out even the substance quite yet. Right. I believe it was raised in that brief. I don't have it in front of me, and I can get you the answer to that. But the point is that we don't dispute that in the settlement Titan assigned its rights to Kennedale. Kennedale raised the claim. So National Union, to the extent they're sub- and National Union is now claiming that they're subjugated to Titan because that settlement was made before the Kennedale-Williamsburg settlement. But that doesn't follow with the facts because it's a contingent claim, and if you look at all the briefings and all the orders, everyone's clear that first the Kennedale-Williamsburg settlement happened, then the Kennedale-Titan settlement happened. And I'm- Your time is up. May it please the Court, Counsel. Don Burforth representing Titan Construction Company. First, I'll address the timing issue. The Court had questions on that. And under Federal Rule of Appellate Procedure, A4A, a attorney's fee motion, which is what Mid-Continent is trying to argue, is the triggering point for the time for appeal, does not stop the time for appeal. Under 49E, once there's a final order, that is when the appeal applies. In this particular case- Give us your best argument that the July 14, 2009 order was final and appealable. It was final and appealable because Judge Peckman issued the order. It was not opposed. We specifically asked for $1.44 million in prejudgment interest, and Judge Peckman said granted. Now, the Mid-Continent didn't object to that motion. Here's a question I have. In your motion, which he's helpfully provided, you say it should be approximately $1.44. Your Honor, because- That's not quite the same as $1.44. We did say that, but yet they did not oppose that motion. So Judge Peckman, rightly so, assumed that that number was correct and said the motion was granted. You offered a proposed form of order, correct? Yes, Your Honor, saying that the motion was granted. So how would we know how much the judgment was for in this case? I believe that- Are you referring to the judgment that was entered in the underlying case or the judgment entered after Judge Peckman issued her order on summary judgment? Either one. Okay. And the evidence shows that there were judgments, there was a stipulated judgment, and it shows how much National Union paid on behalf of Titan. One of the things, and I want to get off just for slightly sort of moving into the real party and interest, but what- Stop. You may want to run over there, but you've got to get past this first. So I believe that- I mean, if you only ask for approximately $1.44, why does it all of a sudden become assuredly $1.44 when the motion is granted? Because they didn't oppose it. We said that to the best of our knowledge- They didn't oppose approximately $1.44, but that's not a judgment amount. That was the pre-judgment interest amount. Correct. That wasn't the amount of the judgment. The $3 million was the judgment amount. Correct, Your Honor. But my best understanding is that they didn't oppose the motion. Judge Peckman- All this could have been easily avoided if you then go in and say to the court, I need a judgment, because especially if you ever wanted to go enforce it, what are you going to be enforcing? A motion to grant this and that? I mean, normally you go in, you get a judgment, you say to the clerk, or say to the judge, I need a judgment. I need a piece of paper that says judgment. But 59E doesn't require a judgment, and the proper procedure under 59E is for the court to grant the order, granting pre-judgment interest. A summary of judgment was put together, but- But the 59E order is the final determination by Judge Peckman. If they had opposed it- The Seventh Circuit case that seems to say, well, it doesn't make sense under 59E that you don't need a judgment if you're granting the motion as opposed to just denying it. In each of those cases that were cited by Mid-Continent, there was something else that the court had to do. There was something more than a ministerial task. They had to either get additional information, the court had to do additional analysis. If your counsel says, well, that's exactly what's going to happen here, Titan will furnish the court and counsel with proof that that never happened. And yet because they did not oppose the motion, the court went ahead and granted it on our opening brief. That's very odd. And as I mentioned, is the cases that they cited, where there was a further order, the other circuits, that again was a situation where they were- where there was something else that the court was going to do. And as a result, the court either issued its own order or asked the parties to submit an order. And here the district court did not ask the parties to submit an order because it took its own order under 59E as final. And if under appellate rule, if the Rule 59E order can be final. I think one of the things that has to be recognized here, and this sort of relates to this, but it also relates to the real party in interest, is the fact that there are two sets of national union policies. And council talks about the policies that were referred to as the Kennedale policies. National union issued policies to Kennedale, also issued policies to Titan.  Were the ones that were stipulated to be dismissed. The policies that were issued to Kennedale were not dismissed in the stipulation that council is talking about. Those policies are the one under ones which national union paid for Titan's liability. As a result of Titan's paying that amount on behalf of Titan to the Homeowners Association, by operation of law, national union received the subrogation rights of Titan against its insurers. And as the Washington courts have held, is if one insurance carrier is bringing an action against the insurance carrier of an insured, under this is the McCrory case, it is brought in the name of the insured. So it's important here to understand that the stipulation that Judge Callahan you ask about is this stipulation of dismissal was of the Titan policies. There was no stipulation of dismissal in the coverage case of the Kennedale policies, which are the policies that had the right of subrogation against mid-continent. And that's where Titan then stands in the shoes. Titan stands in the shoes, or I'm sorry, yes. National union stands in the shoes of Titan. And under McCrory, it's brought in the name of Titan and it can be brought against national union. Uh-huh. So it's very simple. What we have here is we have a situation where an insurance carrier pays the liability of an entity, such as Titan, and that gives them the right of subrogation against a third party, in this case, mid-continent. And they can bring that in the name of the insured, and so therefore they are the real party in interest. This was actually argued before this court before earlier, and we thought that it was dealt with, the district court thought that it was dealt with, but it was raised again in this appeal, so I'm addressing it, and obviously counsel believed that that was one of the issues for him. His other issue that he didn't get a chance to argue, and I don't know if you're going to be giving him a chance to argue it, is the burden of proof on a couple of exclusions. Really, it's just one exclusion. This court determined that... This is a federal district judge trying to figure out what the state law is, right? That is correct. And there isn't really any Washington state law that exactly tells him what to do, right? No, there is Washington state law that says the burden of proof to show that an exclusion applies belongs to the insurance carrier. There's no question about that. I think everyone would agree that's the mutual view. So is the question whether this is an exclusion or whether it's coverage? That's not how they said it, but yes, I think that that's what they're trying to say, is that they're saying that somehow in the insuring agreement that there was this same issue about whether or not the insured expected or intended property damage also had to be decided under the insuring agreement of the case. And what they cite, and the reason I believe that that's what they're arguing, is in their reply brief they talk about the Queen City Farms case. But the Queen City Farms case is related to, not to an exclusion, but it related to an insuring agreement. In the Queen City Farms case, the language was essentially, we will pay for the legal liability of an insured that neither expected or that subjectively or from their standpoint neither expected or intended the property damage. That's not an exclusion. In that particular case, there was that insuring agreement, and then there was an exclusion, probably an A2 exclusion that said expected or intended. And Queen City Farms said in that particular case, given the language of that policy in Queen City Farms, that the burden was on the insured to show that it did not expect or intend property damage. Not for the exclusion, but for the insuring agreement. First of all, the mid-continent, there are two mid-continent policies. One is the primary policy and one is an umbrella policy. The umbrella policy does not have any language in it that goes to the issue of what knowledge the insured had. The only thing that does that, that is goes to the knowledge that the insured had, is the same exclusion that we're talking about here where they expected or intended property damage, which is subjectively, which is exclusion 2A. So for the umbrella policies, they can't even make this argument. For the primary policy. What about the mold issue? And I want to just ask you one particular point on that. It seems that if you exclude the complaint, then there's like a photograph and it says moldy. Is that the only evidence in the record? A couple of things. The Judge Peckman pointed out that based on the testimony, or she pointed out that you can have wood rot, which is what they really claim, that exists. They have a consultant, and it's the Homeowners Association consultant. That's important to recognize because they talk about this consultant as being Titan's consultant. It was the Homeowners Association, the plaintiff's consultant, which said that there was wood rot and decay. And as the court below found, wood rot and decay can be caused by mold, but it can also be caused by bacteria. And in this particular case, there's no question that Mid-Continent had the obligation to prove the existence of this exclusion. And the court came to the conclusion that they did not meet their burden to prove it was caused by bacteria or mold. And if it was caused by bacteria, it would not be excluded under the mold. The other thing that they also took into consideration, Mid-Continent's 30B6 designee, Keith Nye, who testified and said that essentially whenever there is water on wood, there's a possibility of mold, mildew, et cetera. But that he had no actual knowledge, excuse me, in this particular case that there was any mold or mildew or fungus. And he says that that is an exclusion that they assert in a reservation of rights letter because there's water involved, but that there was no evidence. So Judge Peckman below the district court found that they failed to meet their burden to show that and that there might be a tribal issue, or is there really no evidence? She found that there was no evidence. But I'm wondering if there was this one little reference. There was this reference to it, but since it was a motion for summary judgment, and they have the burden of proof to show that the exclusion, and she ruled as a matter of law that they could not meet their burden of proof based on the evidence that they had. She didn't think that there was a question. She didn't find a question of fact. She found that they had the burden of proof. Nobody contested it. In other words, with everything they put on the table, it didn't rise to the level. Exactly, Your Honor. That was the point. Therefore, we would request that this court find first that it is the appeal is untimely, and secondly, based on the information that has been provided and the arguments that have been made, that the court affirm the decision below and dismiss the appeal. Thank you, Your Honor. Thank you. Are there any questions of the appellant? No. Thank you. The case just argued is submitted for decision.
judges: Schroeder, McKeown, Callahan